UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ASHTON A. SMITH,

    Plaintiff,      Case No. 1:19-cv-402

v.              Honorable Paul L. Maloney

JOHN DAVIDS et al.,

    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Davids, Washington, and Corizon.

## Discussion

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events

about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington, Corizon Health, Inc., RMI Warden John Davids, and RMI Nurses (unknown) Spear and James Leland.

Plaintiff alleges that he became involved in a verbal altercation with RMI Nurse Page (not a Defendant) on July 26, 2018, because of his attempt to avoid waiting in the medication line. Nurse Page allegedly wrote a false major misconduct against Plaintiff, which resulted in Plaintiff being sent to segregation for several weeks. Plaintiff admits that he "cursed out" Nurse Page, and he asserts that the misconduct ticket was issued in retaliation for his having done so. (Compl., ECF No. 1, PageID.4.)

Several days later, Nurse Page distributed medications to segregation prisoners, including Plaintiff. As a result of her interaction with Plaintiff, Page issued a second major misconduct charge, asserting that Plaintiff had again cursed her. Plaintiff claims that the misconduct charge was prompted by Plaintiff's refusal to apologize to Page. Between July 26 and August 8, 2018, Defendant Nurses Leland and Spear, as well as (unknown) Steward (not a Defendant), "verbally assaulted" him daily and refused to issue his medication, stating, "Your [sic] on Page's shitlist." (*Id.*)

Plaintiff had previously received several corneal transplants. He had been informed by his ophthalmologist, Dr. C. Hood, that, if he ever showed the slightest symptom of an eye infection, he should immediately inform healthcare personnel, because he was at high risk of permanent partial or total blindness from a corneal infection. Plaintiff realized that he had an eye infection on August 11, 2018, when he awoke with his right eye stuck shut from discharge. He informed Defendants Spear and Leland during the 1-Unit morning and evening medication lines.

Defendants looked at his eye, but they refused to provide or refer him for medical care, because he refused to apologize to Defendant Page.

The infection became worse on August 12 and 13, developing into a corneal infection, and the burning and pain became intolerable. Plaintiff's eye was even more swollen and red, and a white cloudy mass began to form over the cornea, obscuring Plaintiff's vision. The eye also discharged sticky pus. Defendants again refused Plaintiff medical help.

On August 14, 2018, Plaintiff's eye was glued shut, his eye was purple and photosensitive, and it had a thick, solid mass covering nearly a third of his cornea. Plaintiff also suffered disorientation and vertigo secondary to the infection. Defendants again looked at the eye, but refused to provide medical treatment. On August 15, 2018, Plaintiff awoke with further eye deterioration, resulting in his inability to see more than shadows. Defendant Leland again refused to provide him treatment.

Between August 11 and 15, 2018, Plaintiff repeatedly informed Defendants Spear and Leland that he possibly had a staph infection and corneal ulcer. He informed them of his history of corneal transplants and of the risk an infection posed to his vision. In addition, Plaintiff alleges that his history is contained in the prison medical records. Defendants repeatedly informed Plaintiff that, until he apologized to Page, he would not be provided treatment. Indeed, Defendant Leland made the following comments on successive days:

> Just because your eye looks angry, that don't make you special . . . put in a kite and don't ask for any ice, – Do not know why Slusher gave you ice anyway, . . . you better get off Page's shitlist.
>
> . . .
>
> Damn it looks worse than yesterday! On a pain scale from 1 to 10, how bad is it? – Good!, should not have called nurse Page a bi*ch!
>
> . . .

> You ain't got nothing coming until Page ok's it!, . . . hope it's soon because that eye is going to fall out any minute now!

(Compl., ECF No. 1, PageID.7.)

Finally, on August 15, 2018, Plaintiff sought assistance from Correctional Officer Short for medical treatment for his serious medical need. At the next med-line visit, Defendant Leland stated, "So you went behind my back and had your rock officer call my boss, we stick together and you really ain't got nothing coming now!" (*Id.*, PageID.8.) At the meal-time med window, Plaintiff again requested attention, but Defendant Spear refused, stating, "I don't care if your eye falls out, you should not have disrespected Nurse Page. Until you apologize, we[']re not treating your eye, so good luck.--- Find someone else to give you help.--- All you have to do is say you're sorry, until then you got nothing coming." (*Id.*)

Later on August 15, Plaintiff awoke blind in the right eye. Plaintiff informed Defendants, but no assistance was given by medical staff. In a last-ditch effort to get treatment, Plaintiff refused to lock up in his cell, facing a risk of being placed in segregation. At that point, an officer saw Plaintiff's eye and informed his supervisor. The supervisor demanded that health care assess the eye. Plaintiff was seen by a doctor, who immediately determined that it was a medical emergency. The doctor ordered that Plaintiff be transported to the University of Michigan to see his corneal specialist, Dr. Hood.

Defendant Hood determined that Plaintiff had a corneal ulceration caused by an untreated eye infection. In an effort to save Plaintiff's eye, Dr. Hood placed Plaintiff on strong antibiotics, which were administered hourly for over a month. Plaintiff also was placed on pain medication and transferred to Duane Waters State Hospital, where he remained for two months. Because of the extreme nature of the infection, Dr. Hood requested, and Plaintiff authorized, that Plaintiff's eye be photographed over several weeks for purposes of training University of Michigan

4

medical students on the result of an untreated staph infection and the subsequent progression of treatment.

Plaintiff alleges that Defendants' refusal to treat his eye infection caused him to nearly go blind, to experience long-term pain, and to be hospitalized for months. He asserts that he continues to suffer vision impairment and photophobia.

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment. He also alleges that Defendants' lack of treatment amounted to gross negligence and medical malpractice under Mich. Comp. Laws § 691.1407(2). For relief, he seeks substantial compensatory, exemplary, and punitive damages.

II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Davids & Washington

Plaintiff makes no factual allegations against Defendant Warden Davids or Defendant Director Washington. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded

6

to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Plaintiff fails to even mention Defendants Davids and Washington in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Arguably, however, Plaintiff intends to allege that Defendants Davids and Washington are liable for the denials of medical care because they failed to adequately supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

7

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Davids and Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### B. Corizon, Inc.

Plaintiff also sues Corizon, Inc., a private corporation that contracts with the State of Michigan to provide medical care to prisoners. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon, Inc.— can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West,* 487 U.S. at 54). It is well established, however, that a private entity, like an individual defendant, may not be held liable under § 1983 based upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691). Instead, to establish a valid § 1983 claim against a private corporation, a plaintiff must meet the requirements for demonstrating liability against a municipality. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street,* 102 F.3d at 817-18 (same); *Rojas v. Alexander's Dep't. Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818.

Here, Plaintiff makes no allegations against Defendant Corizon, Inc., much less allegations demonstrating that a policy or custom caused his injury. Instead, his claim rests entirely on a theory of respondeat superior, which is insufficient to create liability under 1983. *Street*, 102 F.3d at 818. As a consequence, Petitioner fails to state a claim against Defendant Corizon, Inc.

### C. Defendants Spear & Leland

Petitioner contends that Defendants Spear and Leland were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something

9

more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Upon initial review, the Court concludes that Plaintiff's allegations against Defendants Spear and Leland are sufficient to state a claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Davids, Washington, and Corizon, Inc., will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims against Defendants Spear and Leland remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 21, 2019                              /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          United States District Judge